IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

**GEORGE R. SCHWARTZ, M.D.,**

      **Plaintiff,**

v.                                                                                          CIV No.  97-1061 JP/LFG

**AMERICAN MEDICAL ASSOCIATION;
AMERICAN COLLEGE OF EMERGENCY
PHYSICIANS; BRIAN McCORMICK; AND
DOES 1 through 50, inclusive,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On July 28, 1998, at a pretrial conference, plaintiff was present and was represented by Britton Monts, Esq. and Karen Aubrey, Esq., Defendant American College of Emergency Physicians was represented by D. Bradley Kizzia, Esq. and Emily Franke, Esq., and Defendants Brian McCormick and the American Medical Association were represented by Martin Esquivel, Esq.

During the conference we discussed the pending motions in this case.  On June 18, 1998, Defendant American College of Emergency Physicians filed a motion for summary judgment (Doc. No. 51), and on June 23, 1998, Defendant American Medical Association and Defendant Brian McCormick filed a substantially similar motion for summary judgment (Doc. No. 62).  After thoroughly considering the law, the facts, and the arguments of counsel, I conclude that defendants' motions should be granted.

I.     **LEGAL STANDARDS**

    A.     **Summary Judgment Standard**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits, "show that there is no genuine issue as to any material fact..."  *Id.*  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States,* 590 F.2d 884, 8887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id*. at 322.

    B.     **Defamation Actions**

Under New Mexico law, in a defamation action the plaintiff must prove each of following elements: (1) a defamatory communication; (2) published by the defendant; (3) to a third person; (4) of an asserted fact; (5) of and concerning the plaintiff; and (6) proximately causing actual injury to the plaintiff.  *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 429 (1989).

Where the plaintiff is a public figure, the plaintiff must prove the additional element of

actual malice, *Newberry,* 108 N.M. at 429, and "must also show the falsity of the statements at issue in order to prevail." *Newberry,* 108 N.M. at 430. "At the earliest possible stage," the trial court should determine "whether the plaintiff can establish that the statements regarding a public figure are (1) false; (2) defamatory; and (3) [whether] evidence of actual malice [exists]." *Andrews v. Stallings*, 119 N.M. 478, 483 (Ct. App. 1995).

## II.   BACKGROUND

Dr. Schwartz is an emergency physician who wrote an editorial article in late 1993 entitled "Sounding an Alarm," in which he stated his negative opinions about "the take-over of hospital emergency departments by multi-hospital contract management companies." Complaint at ¶ 10. On April 20, 1994, Coastal Healthcare Group, Inc. ("Coastal") filed a defamation action against Dr. Schwartz in North Carolina alleging that Dr. Schwartz defamed Coastal by the comments he made in his editorial article.

On August 11, 1997, Dr. Schwartz filed this defamation action based upon the contents of an article entitled "Emergency Medicine Contracting at Center of Libel Suit." This article, written by defendant Brian McCormick, an American Medical Association ("AMA") employee, appeared in the *American Medical News* on September 12, 1994. In the article, Mr. McCormick wrote:

> One of the AAEM [American Academy of Emergency Medicine] tactics that most concerns Dr. McCabe is a solicitation last month to all board-certified emergency physicians seeking $100 donations to Dr.Schwartz' defense fund. "Their letter only mentions half the story, telling doctors that Dr. Schwartz is being sued for attacking contracting practices, but failing to mention that *he is also being sued for stock fraud.* I can't very well contact every emergency physician to tell them the rest of the story, but there is an ethical question here regarding Dr. Schwartz that physicians should know about." (emphasis added)

Dr. Schwartz' current suit focuses on the article's quotation of the American College of

Emergency Physician's ("ACEP") President, John McCabe, as stating that Dr. Schwartz was "being sued for stock fraud."

## III.   ANALYSIS

### A.   Dr. Schwartz' Status as a Public Figure

At the hearing I ruled that plaintiff is a public figure for a limited range of issues. A public figure is a person who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351.

> In determining whether [a person] is a limited public figure for defamation purposes, examination focuses on whether the defamatory material concerns a public controversy or topic of legitimate public concern, together with the nature and extent of [the person's] participation in the controversy.

*Furgason v. Clausen*, 109 N.M. 331, 338 (Ct. App.), *cert. denied,* 109 N.M. 232 (1989). "Whether the nature and extent of a person's participation in a controversy subjects him to the status of a public figure is gauged by ascertaining the extent to which participation in the controversy is voluntary, the extent to which the individual has access to the channels of effective communication, and the prominence of his role in the controversy. *Id.* The question of whether a person is a public figure or a private person is a question of law. *Marchiondo v. Brown*, 98 N.M. 394, 399 (1982).

#### 1.   *The Existence of a Public Controversy*

Plaintiff's Complaint establishes the existence of a public controversy:

> In late 1993, Dr. Schwartz wrote an editorial, "Sounding An Alarm," in which he stated his opinion regarding the take-over of hospital Emergency Departments by multi-hospital contract management companies .... At the time Dr. Schwartz wrote his editorial, the practice of multi-hospital Emergency Departments had been the subject of increasing professional controversy and criticism in the [field] of emergency medicine. At the same time, independent of Dr. Schwartz's editorial,

other medical magazines and journals, as well as the national news media, were reporting on the same practice, publishing feature stories, news articles and editorials.

*Complaint* at ¶ 10.

        2.    *The Nature and Extent of Plaintiff's Participation in the Controversy*

Plaintiff testified in his deposition that he "was a spokesperson for the ideas that were expressed in [his] editorial, and ...[he] was held in high repute, and interviewed [for a television program, the "700 club"] for that purpose...."  *See Deposition of Dr. Schwartz* at p. 184.

In addition, Plaintiff states in his Complaint:

Dr. Schwartz is a nationally-recognized pioneer in the professionalization of the field of Emergency Medicine, ... a nationally recognized author in the Emergency Medicine profession who is editor-in-chief of a leading textbook used in medical schools nationwide, a scholar and researcher in the Emergency Medicine field . . .

In early 1994 Dr. Schwartz' editorial article appeared in two publications, *Emergency Medicine News* and *Journal of Emergency Medicine*.  Plaintiff was interviewed on a national television program, the "700 Club," which was doing a story on emergency room contracting practices.  *See Plaintiff's Deposition,* pp. 183-84.  These facts and allegations prove that Dr. Schwartz voluntarily "mount[ed] a rostrum to advocate a particular view," *Hutchinson v. Proxmire*, 443 U.S. 111, 169 (1979).

    **B.**    **The Defamatory Nature of the Statement**

"The threshold, constitutional issue which must be determined is whether the publication at issue is reasonably capable of bearing a false, defamatory meaning." *Andrews*, 119 N.M. at 483.  A statement is defamatory "if it has a tendency to render the party about whom it is published contemptible or ridiculous in public estimation, or expose him to public hatred or

contempt, or hinder virtuous men from associating with him." *Bookout v. Griffin*, 97 N.M. 336, 339 (1982); *Andrews*, 119 N.M. at 482.  "A statement is deemed to defamatory per se, if, without reference to extrinsic evidence and viewed in its plain and obvious meaning, the statement imputes to plaintiff: the commission of some criminal offense involving moral turpitude; . . . . [or] some falsity which prejudices plaintiff in his or her profession or trade . . . ." *Newberry,* 108 N.M. at 429.  The "plain and ordinary meaning" of the statement that Dr. Schwartz "was being sued for stock fraud" indicates that the statement was capable of bearing a false, defamatory meaning.

> **C.     The Falsity of the Statement**

Because Dr. Schwartz is a limited purpose public figure, it is his burden to show the falsity of the statement at issue.

The determination of whether Dr. McCabe's statement that Dr. Schwartz "was being sued for stock fraud" was untrue necessarily involves a review of the complaint filed against Dr. Schwartz in the Coastal litigation.

In the "Second Cause of Action (Slander)," Coastal alleged the following:

> 22.    On information and belief, defendant has verbally voiced criticisms about Coastal, consistent with the statement made in the Article, to securities analyst(s).
> 23.    On information and belief, a reason why defendant has voiced criticisms to securities analyst(s) is to have the analyst(s) lower their recommendations or opinions about Coastal's publicly traded stock and, thereby, affect negatively (i.e. lower) the price of that stock.
> 24.    On information and belief, a reason why defendant has engaged in actions designed to affect negatively (i.e., lower) the price of Coastal's stock is that defendant, at approximately the time of making statements to securities analysts, had shorted Coastal's stock.

*Exhibit C to Defendant McCormick's and AMA's Motion for Summary Judgment.*

In the "Third Cause of Action," Coastal incorporated by reference the allegations in all the

preceding paragraphs of the Complaint, including the allegations set forth in paragraphs 22 through 24, and added the following allegations.

> 31. The business activities of Coastal are in "commerce," and the act of publishing the Article and making statements to securities analyst(s) designed to affect the price of Coastal stock were in "commerce" under N.C. Gen. Stat. § 75-1.1. . . .
> 33. The false and defamatory statements made by defendant in the Article and to stock analyst(s) deceived or tended to deceive the public, the customers and potential customers of Coastal, the patients and potential patients of Coastal, the professionals and potential clinical professionals of Coastal, and the employees and potential employees of Coastal about the competence, honesty, integrity, and quality of Coastal and its physicians.
> 34. Defendant's activities constitute unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

*Id.*[1]

A common, ordinary meaning of "fraud" is "deceit, trickery; cheating." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY (2nd ed. 1983). A legal definition of "fraud" is "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her injury." BLACK'S LAW DICTIONARY (Bryan Garner, ed. (pocket ed.), 1996).[2]

Coastal's complaint made allegations regarding actions involving stocks and separate, although related allegations, about deceit. Dr. Schwartz was sued, in part, for deceptive actions related to stock transactions. Counsel for plaintiff agreed at the pretrial conference that the plaintiff would not have considered the article defamatory if it had quoted Dr. McCabe as stating, "Dr. Schwartz is also being sued for deceptive acts relating to stock transactions." The fact that the phrase "stock fraud" does not appear in the Complaint is immaterial. The meanings of the

---

[1] Section 75-1.1 (a) of the General Statutes of North Carolina states, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

[2] Both of Dr. Schwartz' experts, agreed in their depositions that the term "fraud" encompasses "deceit." *See Raney Deposition*, pp. 40, 74; *Gassoway Deposition*, pp. 59, 99-100.

statements "being sued for stock fraud" and "being sued for deceptive acts relating to stock transactions" are substantially similar.[3] The statement that Dr. Schwartz was being sued for stock fraud is "substantially true." *See Franklin v. Blank*, 86 N.M. 585, 588 (Ct. App. 1974) (stating that under New Mexico law, it is sufficient to show that the imputation is substantially true.) Viewing the facts in the light most favorable to the plaintiff, I conclude that Dr. Schwartz has not met his burden of showing the falsity of the statement at issue.

### D.     Actual Malice

To prove actual malice, a plaintiff must prove by "clear and convincing evidence" that the statement at issue "was made with knowledge of its falsity or with reckless disregard of the truth." *Newberry*, 108 N.M. at 430. Reckless disregard means that the statement was made with a high degree of awareness of its probable falsity or that the publisher entertained serious doubts as to its truth. *McNutt v. New Mexico State Tribune Co.*, 88 N.M 162 (Ct. App.), *cert. denied*, 88 N.M. 318 (1975). The existence of malice is a fact question, and is not a question of law to be decided on summary judgment. *Coronado Credit Union v. KOAT Television, Inc.*, 99 N.M. 233, 239 (Ct. App. 1982).

There is a genuine issue of material fact on the issue of actual malice, although it is

---

[3] Counsel for plaintiff argued during the pretrial conference that the meaning of the two phrases is different because the phrase "stock fraud" is a "charged phrase" which implies that Dr. Schwartz engaged in criminal activity. The suggestion that the use of the word "fraud" has exclusive or primary reference to criminal conduct is simply incorrect, as a review of the dictionary definitions of the term reflects. *See, e.g. Gurda v. Orange County Publication*, 439 N.Y.S. 2d 417, 423, 425 (1981) ((Mellon, J. & Titone, J., concurring in part and dissenting in part), *rev'd*, 436 N.E.2d 1326 (N.Y. 1982) (adopting the concurring and dissenting opinion of the intermediary appellate court's case). In addition, it is undisputed that the article never stated that Dr. Schwartz was under criminal investigation or that he was involved in a criminal case with Coastal. In fact, Dr. Schwartz does not deny that Mr. McCormick accurately described the Coastal civil lawsuit in the first four paragraphs of the article. *See Schwartz Deposition*, p. 401-402.

doubtful that at trial Dr. Schwartz would be able to meet his high burden of proving actual malice by "clear and convincing" evidence.

### E. Defendants' Additional Arguments

Defendants McCormick and the AMA also argue that the statement at issue (1) is subject to qualified privilege because it is a fair an accurate report on a matter of public concern, and/or (2) is absolutely privileged because it was made adjunct to a judicial proceeding.

The fair comment privilege does not apply to statements which "impute dishonorable motives to its subject." *Coronado Credit Union v. KOAT Television, Inc.*, 99 N.M. 233, 239 (Ct. App. 1982). The statement that Dr. Schwartz was being sued for stock fraud and that the suit involved ethical questions does impute dishonorable motives to Dr. Schwartz.

The second argument that the statement is absolutely privileged on its face has no merit. The statement in issue was not made by any officer of the court and was not made adjunct to a judicial proceeding.

IT IS THEREFORE ORDERED that Defendant American College of Emergency Physicians' motion for summary judgment (Doc. No. 51) and Defendant American Medical Association's and Defendant Brian McCormick's motion for summary judgment (Doc. No. 62) are GRANTED, and plaintiff's claims will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

9